# IN THE UNITED STATES DISTRICT COURT FOR
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

IN RE: PAUL W. SHERRICK,    )
      Debtor.                )
                            )

PAUL W. SHERRICK,          )
      Appellant,         )      **NO. 3:17-cv-01086**
v.                         )
                            )      **JUDGE CAMPBELL**

HST CORPORATE INTERIORS, LLC,    )
      Appellee.          )

## MEMORANDUM

Appellant appeals the final Bankruptcy Court's July 6, 2017 "Order Denying Discharge" and Memorandum Opinion (the "Order"). In the Order, the Bankruptcy Court denied Appellant's discharge of debts under 11 U.S.C. § 523(a)(4) based on Appellant's embezzlement, after piercing the corporate veil of Sherrick Construction, Inc.

Appellant alleges the Bankruptcy Court erred in finding sufficient proof to pierce the corporate veil and enforce the debt of Sherrick Construction, Inc. against Appellant, and erred in finding Appellant committed embezzlement under 11 U.S.C. § 523(a)(4). For the reasons stated below, the decision of the Bankruptcy Court is **REVERSED**, and this case is **REMANDED** to the Bankruptcy Court for further proceedings consistent with this opinion.

## I.    FACTS AND PROCEDURAL HISTORY

Appellant was involved in the construction and contracting business in Middle Tennessee beginning in the early 1980s. (Doc. No. 8 at 5). In 1994, Appellant founded Sherrick Construction, Inc. ("Sherrick Construction") and obtained a general contractor's license. (*Id.*). Appellant was the president and sole owner of Sherrick Construction and a certified Small Business Administration 8(a) ("SBA 8(a)") business, authorized to obtain federal contracts as a socially or economically

disadvantaged business. (Doc. No. 1-2 at 2). In June 2011, Appellee HST Corporate Interiors, LLC ("HST" or "Appelle") negotiated a contract with the United States for the installation of furniture and related items at the Hurlburt Field Child Development Center (the "Project") in Florida, and was directed to involve a SBA 8(a) contractor to sign the government contract. (*Id.*). Larry Carr, a representative of HST, contacted the Appellant to see if Sherrick Construction could serve as the SBA 8(a) contractor for the Project. (*Id.*). HST entered into a verbal contract whereby HST would procure and install items for the Project, but Sherrick Construction would be the contracting party with the Federal Government. (*Id.*). HST sent a 91-page attachment to Appellant that included information on the Project, a detailed invoice, the proposed amount to be paid Sherrick Construction, and the amount of the total contract. (*Id.*at 2-3). The total amount of the contract was $314,500.00, and Sherrick Construction would receive $8,960.00 of that total. (*Id*. at 3). Sherrick Construction served as the named SBA 8(a) contractor, and HST purchased and installed the related items for the Project. (*Id.*). On February 13, 2012, Appellant emailed HST stating that he believed the Project should be invoiced in two billings, the first one at 98% of the total billing amount and the second at 2%. (*Id.* at 3-4).

Velzetta Conyers ("Ms. Conyers") coordinated federal contract projects for Sherrick Construction, but had no knowledge of Sherrick Construction's involvement in the Project until February 28, 2012. (*Id.* at 4). Tammy Holzapfel ("Ms. Hozapfel"), the bookkeeper for Sherrick Construction, also had no knowledge of the Project until Ms. Conyers billed the government on March 20, 2012. (*Id.*). Sherrick Construction requested payment from the government for the total contract amount of $314,000 in two separate invoices. The government paid monies directly into Sherrick Construction's operating account on April 18, 2012 ($280,190.83) and August 1, 2012 ($34,309.17). (*Id.* at 4-5).

On July 7, 2012, HST contacted Ms. Conyers requesting an update on payment from the Project and asked if Sherrick Construction received payment from the government. (*Id.* at 5). Ms. Conyers requested an invoice from HST on July 9, 2012 and August 8, 2012, and HST provided the invoice on August 8, 2012. (*Id.*). On January 24, 2013, five months after Sherrick Construction received full payment from the government, HST notified Ms. Conyers that HST had never received full payment for the Project. (*Id.*).

On May 31, 2012, after receiving the first payment for the Project from the government, Appellant transferred $73,161 from Sherrick Construction's account to pay his past due personal income taxes for 2010. (*Id.*). From July 2012 to September 2012, Appellant transferred another $24,550 from Sherrick Construction to pay his personal income tax debt. (*Id.*). According to Ms. Holzapfel, Sherrick Construction also paid $75,000 to $100,000 in the first part of 2012 for payroll taxes because the company did not have sufficient funds when the taxes were due. (*Id.* at 6). Sherrick Construction was also subjected to an insurance audit, which cost Sherrick Construction between $45,000 and $50,000. (*Id.*). Due to Sherrick Construction's SBA 8(a) certification expiration in 2011 and sequestration of discretionary spending imposed by the Federal Government in 2012, numerous awarded bids for Sherrick Construction were never commenced or were cancelled. (Doc. No. 8 at 5-6, 13). This lead to severe cash issues and Sherrick Construction's inability to pay HST for the Project. (*Id.* at 13).

HST filed a lawsuit against Appellant and Sherrick Construction in the Chancery Court for the State of Tennessee. (Doc. No. 1-2 at 6). On January 12, 2016, Appellant and Sherrick Construction field for relief under Chapter 11, which stayed the Chancery Court litigation. (*Id.*). On May 3, 2016, the Bankruptcy Court allowed Appellant and Sherrick Construction to convert their cases to Chapter 7 proceedings. (*Id.*). HST filed adversary complaints to determine the

dischargeability of the debt owed by Sherrick Construction to HST. (*Id.*). The dischargeability action against Sherrick Construction was dismissed by agreed order. (*Id.*).

On February 1, 2017, the Bankruptcy Court conducted a one-day trial to determine the dischargeability of the debt owed to HST by Appellant. (Doc. No. 8 at 15). On July 6, 2017, the Bankruptcy Court entered an Order and Memorandum Opinion finding that: (1) Appellant owed a debt to HST by piercing the Sherrick Construction corporate veil; and (2) HST's claim was not dischargeable because Appellant embezzled funds in order to pay personal expenses under 11 U.S.C. § 523(a)(4). (Doc. No. 1-2). On July 19, 2017, Appellant timely filed a notice of appeal.

## II.     STANDARD OF REVIEW

The Court reviews the Bankruptcy Court's findings of fact for clear error, and its conclusions of law *de novo. Rembert v. AT&T Univ. Card Serv. (In re Rembert)*, 141 F.3d 277, 280 (6th Cir. 1998). A factual finding is clearly erroneous when the reviewing court is left with the definite and firm conviction on the entire evidence that a mistake has been made. *Id.* If a mixed question of law and fact exists the court "must break it down into its constituent parts and apply the appropriate standard of review for each part."*Wesbanco Bank Barnesville v. Rafoth* (*In re Baker & Getty Fin. Servs., Inc.*), 106 F.3d 1255, 1259 (6th Cir.1997).

## III.     ISSUES ON APPEAL

Whether the Bankruptcy Court erred in finding sufficient proof to pierce the corporate veil and enforce the debt of Sherrick Construction against Appellant, and whether the Bankruptcy Court committed clear error in finding Appellant committed embezzlement pursuant to 11 U.S.C. § 523 (a)(4).

# IV.     ANALYSIS

"Bankruptcy is both a creditor's remedy and a debtor's right." *In Re Patel*, 565 F.3d 963, 967 (6th Cir. 2009). The primary purpose of bankruptcy is to grant the debtor a "fresh start," and discharges are to be strictly construed against the creditor and literally in favor of the debtor. *See In Re Keeney*, 227 F.3d 679 (6th Cir. 2000). While discharging debts can sometimes cause harm to creditors, there are statutory exceptions construed to exclude certain debts from discharge. *In Re Patel*, 565 F.3d at 967. A creditor has the burden to prove, by a preponderance of the evidence, that a debt should not be discharged. *Id.*

The Bankruptcy Court found Appellants debt nondischargeable under 11 U.S.C. § 523(a)(4) for embezzlement and rejected HST's claims under 11 U.S.C. § 523 (a)(2)(A), (a)(6), and (a)(14). Neither Appellant or Appellee requests this Court to review the Bankruptcy Court's rejection of the non-dischargeability arguments under 11 U.S.C. § 523 (a)(2)(A), (a)(6), or (a)(14), therefore the only issue properly preserved on appeal is whether the Bankruptcy Court erred in finding that the Appellant committed embezzlement under 11 U.S.C. § 523(a)(4).

## A.  Embezzlement Under 11 U.S.C. § 523(a)(4)

Appellant asserts the Bankruptcy Court erred in finding that he was not entitled to a discharge because he embezzled HST's funds under Section 523(a)(4). Specifically, Appellant argues the evidence presented to the Bankruptcy Court did not establish a *prima facie* case for embezzlement.

Under 11 U.S.C. § 523(a)(4), "a discharge can be denied for a debt for fraud or defalcation while acting in a fiduciary capacity, ***embezzlement***, or larceny." *In re Morse*, 504 B.R. 462, 470-71 (Bankr. E.D. Tenn. Jan. 10, 2014) (emphasis added). "Embezzlement under 11 U.S.C. § 523(a)(4) is defined as 'the fraudulent appropriation of property by a person to whom

such property has been entrusted or into whose hands it has lawfully come.'" *In re Batson*, 568 B.R. 281, 289 (Bankr. M.D. Tenn. Feb. 28, 2017) (citing *Brady v. McAllister (In re Brady),* 101 F.3d 1165, 1172–73 (6th Cir. 1996)). The fraud element of Section 523(a)(4) is "fraud in fact, involving moral turpitude or intentional wrong" and requires "proof of the debtor's fraudulent intent in taking the [creditor's] property." *Cash Am. Fin. Servs., Inc. v. Fox (In re Fox)*, 370 B.R. 104, 116 (6th Cir. BAP 2007). A creditor must prove all elements for embezzlement by a preponderance of the evidence. *In re Batson*, 568 B.R. at 289-90; *see also In re Fox*, 370 B.R. at 116.

The Bankruptcy Court found a preponderance of the evidence supported a finding of embezzlement by the Appellant. (Doc. No. 1-2 at 15). Based on testimony and evidence at trial, the Bankruptcy Court found no dispute that HST's funds for the Project were lawfully entrusted to Appellant and Sherrick Construction, and those funds were used for other purposes. (*Id.*). The Bankruptcy Court found Sherrick Construction served as the SBA 8(a) contractor on the Project for a fee and HST performed all the work. (*Id.*). The majority of the funds were to go to HST after the government paid Sherrick Construction. (*Id.*). Appellant did not notify HST when the payments were received, but instead used the funds to pay his overdue personal income taxes, Sherrick Construction's payroll taxes, and fees related to an insurance audit. (*Id.* at 16). The Bankruptcy Court found circumstantial evidence to indicate fraud because the Appellant needed HST's funds to pay his expenses, thus Sherrick Construction no longer had the funds to pay HST. (*Id.*). By the end of August 2012, Sherrick Construction's bank account balance was $24,131.82, and the Bankruptcy Court noted this was before the government sequester in December of 2012. (*Id.*).

On appeal, Appellant challenges the Bankruptcy Court's findings on each of the elements for embezzlement. First, Appellant states that Sherrick Construction was not entrusted with any

property of HST because the proceeds from the Project were owned by Sherrick Construction. (Doc. No. 8 at 34). Appellant asserts HST knew the government would pay the funds to Sherrick Construction and therefore Sherrick Construction was entitled to use those funds. (*Id.* at 38). Second, Appellant argues HST did not present any proof that Appellant intended for Sherrick Construction not to pay HST once the government paid for the Project, thus Appellant lacked fraudulent intent. (*Id.* at 35-36). Instead, Appellant took a distribution of available funds from Sherrick Construction, which he solely owns, before he received an invoice from HST. (*Id.* at 37). Finally, Appellant argues he intended for Sherrick Construction to pay HST, Appellant attempted to keep Sherrick Construction solvent in order to repay its debts, and he sought alternative funding to pay HST. (*Id.* at 42). Appellee responds by arguing Appellants actions were intentional acts of fraud, and the evidence shows Appellant never intended to pay HST its money. (Doc. No. 12 at 20).

This Court finds no evidence that Appellee lawfully entrusted property to Sherrick Construction. To demonstrate embezzlement a creditor must prove all three elements, and the circumstances in this case do not satisfy the first element. *In Re Fox*, 370 B.R. 104, 115-16 (B.A.P. 6th Cir. 2007). The Bankruptcy Court found that when payments were received for the Project, the Appellant knew that Sherrick Construction was not entitled to keep the entire amount and the funds from the government were lawfully HST's and entrusted to Appellant. (Doc. No. 1-2 at 15). This Court disagrees. The facts at trial established Sherrick Construction may have owed money to HST under an agreement, but Sherrick Construction was not entrusted with any property of Appellee. In the case of *In Re Bucci*, 493 F.3d 635 (6th Cir. 2007), the Court of Appeals found "[embezzlement] involves an express or technical trust relationship arising from placement of a ***specific res*** in the hands of the debtor." (emphasis added). Tennessee Court have held that, "a mere

7

lien or security interest does not rise to the level of ownership sufficient to support a claim under § 523(a)(4)'s embezzlement provision." *Hulsing Hotels Tenn., Inc. v. Steffner (In re Steffner),* 479 B.R. 746, 766 (Bankr. E.D. Tenn. 2012); *see also Kraus Anderson Capital, Inc. v. Bradley (In re Bradley),* 507 B.R. 192, 200 (B.A.P. 6th Cir. 2014) ("As owner of the collateral, the debtor remained the owner of its proceeds, even though both the collateral and its proceeds were subject to a security interest. No person can embezzle from himself.").

Sherrick Construction was the true owner of the funds received from the Federal Government. While HST was entitled to a majority of the funds, the money was entrusted to Sherrick Construction by the government, not HST. The Court finds the evidence presented to the Bankruptcy Court did not establish that Appellee entrusted property to Sherrick Construction. Instead, the Appellant simply owed Appellee a debt that was never paid. Appellant correctly asserts the Project funds were deposited into Sherrick Construction's operating account and was commingled with other funds, making the proceeds fungible and placing HST in the same position as any other Sherrick Construction creditor. (Doc. No. 8 at 39). The Court finds the Bankruptcy Court committed clear error because Appellee failed to establish a *prima facie* case of embezzlement under 11 U.S.C. § 523 (a)(4).

## B. Piercing the Corporate Veil

Appellant further argues the Bankruptcy Court erred in finding proof that Appellant owed a debt to HST by piercing the Sherrick Construction corporate veil. Appellant states there is no evidence that Appellant used his control of Sherrick Construction to defraud HST, and therefore only Sherrick Construction should be liable for HST's debt. However, due to the Court's findings that the Bankruptcy Court committed clear error in denying Appellant's discharge, the Court finds no basis to conduct a separate analysis of this issue.

### V. CONCLUSION

After applying the relevant standard of review, the Bankruptcy Court incorrectly relied in HST's favor on the issue of non-dischargeability under 11 U.S.C. § 523(a)(4). Accordingly, the Bankruptcy Court's Order and Memorandum Opinion entered July 6, 2017 is **REVERSED**, and the case is **REMANDED** to the Bankruptcy Court for further proceedings consistent with this Memorandum.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE